KILLEEN POLICE DEPARTMENT

STATE OF TEXAS

VOLUNTARY STATEMENT - (NOT UNDER ARREST)

THE STATE OF TEXAS      *    CASE: **00-** *11897*          TIME: *1·00pm*

COUNTY OF BELL          *    OFFICER: **FAES**

Before me, the undersigned authority in and for the said County and State, on the 1st day of August, 2000, personally appeared:

NAME : MARIA JOHNSON
DOB: 12-16-60
SSN: 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
HOME ADDRESS: 15180-100 FM 2484, SALADO
HOME PHONE  254-947-3127
WORK ADDRESS: 4800 E. RANCIER, KILLEEN
WORK PHONE: 690-7336
PARENT'S NAME:

who voluntarily makes the following statement:  My name is Maria Johnson.  I am a Youth Worker 1 at the YSI detention center in Killeen.  I have been employed there for one year.  I usually work the third shift from 10:00pm until 6:00am.  Around 10:50pm last night, a resident called central control.  The resident, Christopher Kirven, stated that he needed a cup of water and toilet paper.  I was outside of the pod.  The control officer called me and told me to get him the water and toilet paper.  I entered the pod.  Kirven was in his room standing by the door.  All of the doors to the rooms are locked during the day and at night when the residents are in the room.  Kirven is the only one in his room.  I approached the door.  I asked him what he needed.  I asked him about the water in his room.  He told me that the water was hot.  Kirven told me that he wanted to go use the public sink.  It's the one that they all use when they are taking showers.  I had the door key placed in between my belt and my pants.  I removed the key.  There are windows in the doors in the rooms.  Kirven saw me take the key out and unlock the door.  I put the key back into my belt after I unlocked the door.  I opened the door and Kirven came out.  I stood beside the door.  The door was partially open.  It was open enough for him to get in and get out.  Kirven walked to the sink and got a drink.  He had a cup.  He flushed the toilet then walked back.  As he passed by me, he took his right arm and grabbed me around the neck.  He pulled me into the cell.  Kirven was choking me.  He pulled me over to the bed.  He kept choking me.  I could not breathe.  I ended up sitting on the floor while he sat on the bed.  He was still choking me.  I could not yell.  His hold was too tight around my neck.  As I was about to pass out, I felt his hand around my waist area.  I thought that he was going to take off my clothes, but then I realized that he was taking the door key.  I passed out after that.  I don't know how long I was out.  When I came to, I found myself locked in the cell.  The room doors

Government
Exhibit
W-99-CR-070 (03)
076

*Maria Johnson* (signature)

*MJ* automatically lock when they are closed. Kirven was face down on his bed. He was just laying there. I stood up. I thought that I was going to fall down. I was dizzy and disoriented. I screamed two or three times. One of my co-workers came in and let me out of the room. As we were coming out of the pod, Ms. Harrison asked me about the door key. I noticed that the key was gone. Mr. Jacobs went into Kirven's room and asked him for the key. I went up to the control area with Ms. Harrison. My supervisor came and talked to me and looked at my neck. They called the police. I did a statement for the officer. The resident hurt my neck. It is still sore this morning. I do not know anything about the resident. This was my first time seeing him. When I came on shift last night, I heard the control officer, Mr. Castillo, telling our control officer, Ms. Harrison, about the boys in C Pod being up to something. That was all I heard him say. I asked Ms. Harrison about their conversation. She said that the boys might want to flood their bathroom or something like that. I think that this might have been planned. Another resident of C Pod, Tony Sparks, was asking questions about the personnel for the night. He kept asking about the lieutenant and about Mr. Jacobs. I don't know for certain if he is connected to what happened to me. *MJ*

THE ABOVE STATEMENT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. I AM 39 YEARS OLD AND I DO READ AND WRITE THE ENGLISH LANGUAGE. I COMPLETED THE 12th GRADE IN PUBLIC SCHOOLS. I HAVE NOT BEEN PROMISED ANYTHING OR THREATENED IN ANY MANNER TO CAUSE ME TO GIVE THIS STATEMENT. THIS OFFENSE DID OCCUR IN THE CITY OF KILLEEN, BELL COUNTY, TEXAS.

*Maria Johnson*
Signature

SWORN TO AND SUBSCRIBED TO BEFORE ME ON THIS THE ___/___ DAY OF *August* , 2000 A.D.

*Noreen E. Faes*
Notary Public in and
for the State of Texas

Noreen E. Faes
NOTARY PUBLIC
STATE OF TEXAS
COMMISSION EXPIRES
09-29-2000

IN ASSOCIATION WITH:
EUGENE C. WATERS, PH.D.

(817) 774-8272

## FRANK A. PUGLIESE, PH.D., P.C.

PSYCHOLOGIST
DIPLOMATE IN FORENSIC PSYCHOLOGY, AMERICAN BOARD OF PROFESSIONAL PSYCHOLOGY
19 SOUTH 25TH STREET, SUITE 100
TEMPLE, TEXAS 76504

**ORIGINAL**

## PSYCHOLOGICAL EVALUATION

Tony Sparks                                        October 27, 1998

Tony is a 15 year old biracial male referred by the Bell County Juvenile Probation Department for an evaluation. He is an only child who lived with his mother and stepfather prior to his placement in the juvenile detention facility approximately four days ago. He was enrolled in the Killeen Ninth Grade Center and reported being a subaverage academic achiever. His stepfather is in the Army currently stationed in Germany, his mother is employed locally, and his birth father resides in Illinois and has had intermittent contact with him throughout his life.

Tony is a thin youngster of average height who entered the session in a quiet and reserved manner. He responded to most questions hesitantly and rarely expounded upon any of his answers. His affect was flat and his mood was serious and he maintained a highly defensive and evasive stance towards the evaluation process. There were no suggestions, nonetheless, of gross perceptual distortions or impaired reality testing and he denied episodes of depression, excessive anxiety or nervousness, and appetite or sleep disturbance. He did say he smoked marijuana on two occasions but said he has not used any other substances.

Tony indicated he was placed into the detention center four days ago after being charged with evading arrest and providing false information to a peace officer. He explained he had been placed on house arrest approximately two months ago by juvenile authorities for stealing a bicycle from a neighborhood house and chose to "go to a fight in my neighborhood" rather than comply with the conditions of house arrest. Although he initially denied having any involvement in the altercation last week, he later acknowledged that he and some of his friends, who were members of the gang Bloods, attempted to challenge a rival gang, the Crips, to fight after school. He offered little explanation as to why he acted in a defiant and aggressive manner and simply shrugged his shoulders and said "I guess I just wanted to go to be with my friends."

In discussing the burglary of a habitation charge pending against him, Tony stated he took a bicycle from a neighborhood residence because "I was tired of walking and needed a bicycle to get home." He related he gave little thought to the wrongfulness or illegality of his actions and had little concern for the impact his behavior had on the owner of the bicycle. He went on to say he has also been implicated in burglarizing another home and stealing a ring from a youngster and insisted he did not engage in any other

Government
Exhibit
W-99-CR-070 (03)
078

Sparks
Page 2

unlawful activities. He did say, however, that another youngster willingly gave him a ring that he had asked for and said the youngster later filed a complaint against him for stealing the ring from him.

Tony was quite reluctant to discuss virtually any aspect of his life with me in any detail and attempted to minimize and/or rationalize his misconduct at home and school. He said he was born and raised in Germany and did generally well until his mother married his stepfather three years ago and his family transferred to the Killeen area shortly thereafter. He claimed he is very happy to get away from Germany because of the very limited number of recreational activities available to him and noted he was particularly pleased with the large number of new friendships he established following the relocation. Despite his contention he did not have any significant adjustment problems in the two years following the move from Germany, he said his decision to join the Bloods gang about a year ago seemed to have a negative impact on his overall attitude towards school and his family. He explained he seemed more interested in socializing with his friends than in completing his assignments and developed "a hot temper." He mentioned he becomes quickly annoyed over minor irritations at school and did not hesitate to act in a verbally and/or physically aggressive manner when he was provoked by others. He went on to say this academic year has been particularly difficult for him since he is failing virtually all of his academic subjects and has had at least five discipline referrals for disrupting the class and being noncompliant. Although he recognized that his behavior was counterproductive and resulted in many personal as well as legal difficulties, he never expressed any regret for his misconduct nor verbalized any intention of exercising better social judgment and self-discipline.

Tony characterized his relationship with his mother and stepfather as being close but was unable to recall any recent family-oriented activities that he and either parent participated in. He maintained he has been very careful to conceal information related to his gang involvement from his mother and surmised she will be very unhappy with him when she learns about his affiliation with the group. He further noted he and his mother made a decision to allow him to spend some time with his birth father in June, 1997 while his dad was stationed at Fort Knox, Kentucky and said he remained with him until January of this year when he returned to Killeen. Although he commented he and his father and stepmother got along well and did not have any significant disagreements, his reluctance to elaborate on any aspects of their relationship causes me to suspect he was not very open or forthcoming about that aspect of his life.

TESTS ADMINISTERED: Peabody Picture Vocabulary Test-Revised, Rorschach, Thematic Apperception Test, Sentence Completion Form.

Sparks
Page 3

TEST RESULTS:  On the Peabody, Tony obtained a score of 101 which is consistent with the average range of receptive language ability.  The score does appear to be an accurate estimate of his intellectual level of functioning.

Tony's responses revealed a highly defensive individual who avoids self-disclosure and attempts to project an image of being independent and self-sufficient.  Beneath the surface, however, is a very angry and hostile adolescent who has strong oppositional tendencies and often feels alienated from the majority of adults in his life.  As a tough-minded and impatient individual with a low tolerance for any type of stress, Tony has trouble delaying initial urges and routinely acts out his aggressive impulses whenever he feels annoyed or aggravated.  Such persons are excessively self-focused and place a premium on obtaining immediate gratification of their selfish needs.  They also resent others placing demands on them and resist the efforts of most people to modify their deviant behavior pattern.

Other test responses reflected Tony's lack of insight into his behavior and inflexible approach to managing his interpersonal relationships.  There were several indications he often pushes the limits in social situations without regard for the concerns of others and will not hesitate to be demanding and challenging.  Moreover, he is likely to be quite manipulative and intimidating towards anyone perceived as being weak and vulnerable and has difficulty showing empathy and compassion for others.  In general, his accentuated needs for approval and recognition far outweighs his ability to exercise adequate self-discipline and prompt him to engage in many unacceptable activities.  Unfortunately, he will likely be resistant towards changing his problematic behavior since he derives much pleasure and satisfaction from exploiting situations to his advantage.

On the Sentence Completion Form, Tony stated his biggest problem is "talking back to my parents," wished his father would "still live with my mother," noted his greatest need is a "tight job," and contended he will "have a good job, a car, and a nice house" five years from now.  In addition, he said he is most afraid of failure when "I got a temper," would like his parents to "hook back together," and feels sad when he thinks about "what my mom is going through when I screw up."

In conclusion, Tony is a 15 year old male who admitted to burglarizing a neighborhood home last month and violating the conditions of his house arrest.  The evaluation revealed a highly oppositional and rebellious youngster who seems to have a strong attachment to a local gang and has essentially adopted an antisocial attitude in his interpersonal dealings.  I am most concerned about his lack of remorse for his misconduct as well as his continued allegiance to his friends in the gang.  In light of these observations, it is my impression Tony be placed on intensive supervision with the

Sparks
Page 4

stipulation any violation of the rules result in placement at a boot camp. Group counseling is also suggested to help him understand how self-defeating his behavior is and to learn more constructive ways of managing his anger and needs for approval.

DIAGNOSTIC IMPRESSION:  Conduct Disorder, Adolescent-onset type.

Frank A. Pugliese, Ph.D.
Psychologist

FAP/rme

# Killeen Police Department
## Voluntary Statement - (Not under Arrest)

**THE STATE OF TEXAS**             **TIME:** 3:50 PM

**COUNTY OF BELL**    **KPD** Case # 00-11897    **OFFICER:** FAES

Before me, the undersigned authority in and for said County and State, on the __1__ day of __August__ 2000 , personally appeared __Devan D. Davis__ SDL: 16178770 ; D.O.B. 12-29-84 ; S.S.N. 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 ;

**Home Address;** 521 E. VMB #406 , Harker Heights TX ; Phone No: (254) 690-6225;

**Work Address;** Killeen High School, Killeen TX ; Phone No: ( ) ;

MOTHER: Adriane Hunter

**WHO VOLUNTARILY MAKES THE FOLLOWING STATEMENT:** Last night, during the 3rd shift, I was in my room. I was laying in my bed. I heard Mr. Castillo come into the pod. Chris Kirven and Tony Sparks were talking to him. They were asking Mr. Castillo if he was working third shift. He asked them why they wanted to know. Sparks said, "Just because". Castillo then told him that he was not going to work the third shift. We layed back down. I had gotten up when Castillo came into the pod. While I was reading a book, I heard Chris and Tony talking. They were waiting for Mr. Castillo to leave the parking lot. They asked me if he had left yet. I saw a car leaving, so I told them that he had left. Sparks waited for about five minutes then he beat on Kirven's wall. He said, "Let's get crump". That means that he wanted to get rowdy. I heard Chris push the call button. A pod officer asked him what he needed. He told her that he needed toilet paper and a cup of water. He said that his water was hot. I heard someone open Chris' door. I saw Chris go get some water. I sat back down after that. I could still see out the window of my door. I saw Chris going back to his room. I saw him drop the cup of water. The pod officer was holding the door open. I saw Chris grab her around the neck and put her in a choke hold, like a sleeper hold. They went into the cell. She was screaming. The door closed shut. I heard a toilet getting flushed two or three times when the officer was screaming. The noise was drowning out the officer's screams. A female pod officer came in real quick. I heard her asking for Ms. Johnson. The pod officer went to room #24. By that time, Chris had let go of the guard and got into his bed. Ms. Johnson was now banging on the door telling the other officer that she was inside the room. I was standing at my door looking out the window. I could see inside of Chris' room because of the security mirror. They brought Ms. Johnson out after that. The staff started to curse out Chris. I did not see anyone else watching out their doors when this happened. Chris Kirven and Tony Sparks are always talking. They do not let me hear what they were saying. Yesterday, Chris and Tony were talking out getting cars and BB guns. They were talking like they were leaving. I heard them talking about getting the guard in a sleeper hold. Chris was

**signature**

_Devan Davis_

Government
Exhibit
W-99-CR-070 (03)
077

CONTINUATION OF STATEMENT FROM _____     page 2

(DD) suppose to take the officer's key after she went to sleep. Chris is telling Sparks this while Sparks is listening. Chris is saying that he will open up the door for Sparks. He said that they were going to run out there and beat up the pod officers. They both said that they were going to get Lynch and this other guy. Sparks was going to get Lynch while Chris went and got the other guy. They said that they were going to go into control and take the keys for the guard's cars. They also said that they were going to shackle the guards. They said that they were going to go to Mexico. I was not a part of their plan. I was shocked when I saw Chris drag the officer into his room. I was very upset over what I saw. I told Chief Sutton about what I saw. I also told her about them planning to escape. (DD)

The above statement is true and correct to the best of my knowledge. I am 15 years old and do read and write the English language. I completed the 10 grade in public schools. I have not been promised anything or threatened in any manner to cause me to give this statement. This offense did occur in the city of Killeen, Bell County, Texas.

_____     **END OF STATEMENT**     _____

THIS STATEMENT WAS COMPLETED AT 4:30P, on the 1 day of August A.D. 2000.

_Dawn Davis_
**signature**

SWORN AND SUBSCRIBED TO BEFORE ME on this the 1 day of August, A.D., 2000.

_____
**Witness**

_Noreen E. Faes_
**NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS**

Noreen E. Faes
NOTARY PUBLIC
STATE OF TEXAS
COMMISSION EXPIRES
09-29-2000

K.P.D.-65-00