W-99-CR-72

```
         James N. Shinder, Ph.D., M.P.H.
                3925 South IH-35
                Waco, Texas 76706
                 (817)714-0189

              PSYCHOLOGICAL EVALUATION

                 Confidential Report
```

Client: Tony Sparks
Date of Evaluation: 9-30-99
Date of Birth: 5-25-83
Chronological Age: 16 years, 4 months
✓ Referred By: Court Ordered by Judge Walter Smith, United States
              Federal Judge - Western District
Techniques Utilized: Bender Visual Motor Gestalt Test
                    Memory Bender Test
                    Kaufman Brief Intelligence Test
                    Wide Range Achievement Test - Revised
                       Level III (WRAT-R)
                    Beck Depression Inventory
                    Thematic Apperception Test
                       (Selected Cards)
                    Personality Inventory for Youth (PIY)
                    Clinical Interview Technique

Evaluation Team: Shannon Baumbach, M.A., L.P.A., Supervisee of
                 James N. Shinder, Ph.D., M.P.H.
                 James N. Shinder, Ph.D., M.P.H., Licensed
                    Psychologist #2833

Tony Sparks is a 16 year, 4 month old Biracial male who was Court Ordered for participation in psychological evaluation by the Honorable Judge Walter Smith in an effort to assess emotional and behavioral functioning. Although Tony refused to discuss the charges pending against him upon his attorney's advice, records indicate that Tony is one of several suspects who were allegedly involved in a recent Fort Hood car jacking and double murder. Tony was transported to the evaluation by two United States Deputy Marshals, both of whom remained outside of the testing room throughout the entirety of evaluation. He arrived with both arm and leg restraints, but was allowed freedom of his left arm for writing purposes. Tony completed a consent form prior to this evaluation and was advised of the limits of confidentiality associated with the evaluation. It was at this time that Tony indicated that he had been instructed by his attorney to not discuss the charges pending against him at this time. He did, however, indicate that he has been charged with "juvenile delinquency, Car Jacking and Aiding and Abetting." He was further aware that these charges related in some manner to the deaths of

Government Exhibit
W-99-CR-070 (03)
079

Case 6:99-cr-00070-ADA    Document 639-14    Filed 03/19/18    Page 2 of 17

Tony Sparks
Page 2

two individuals, but denies being charged with Murder. The requested evaluation was conducted in a private conference room of this practitioner's office, which was a suitable environment for the stated purpose. There were no significant interruptions or distractions that might serve as variables that would influence test results. All tests were administered in keeping with standard procedures.

Tony presents as being adequately oriented in all spheres and was free of significant communication and sensory barriers. He is 5 feet, 6 inches tall, weighs 134 lbs, and is a light completed individual with cropped black hair. He generally appears his stated chronological age. All background information as provided in this report was obtained through interview with Tony and was unverified. He was fully aware of the purpose of the current evaluation and he related to the examiner in a passively cooperative manner. Tony was unable to provide the name of his Court appointed attorney; however, he indicated that he had visited with his attorney on only a limited number of occasions and that his mother, Danielle Brown, was frustrated that this individual was not more involved in the case. Ms. Brown has reportedly petitioned the Court to provide her son with alternative representation. Tony's affect throughout the evaluation remained apathetic and emotionally constricted. He never smiled and he exhibited similar disinterest regarding the various test instruments. With the exception of the current offense, Tony was verbally responsive to all areas of inquiry. He often provided information of a potentially damaging nature.

Tony describes an adolescent lifestyle which is characterized by impulsive, risk taking behaviors. He readily acknowledges gang involvement and has reportedly been a member of the "Bloods" gang for the past 1 ½ years. Tony states that he was initiated into the gang by being "jumped in" and that he has since been involved in a number of physical altercations with opposing gangs. When questioned regarding ownership and use of weapons, Tony indicated that he has previously carried a firearm for protection. This weapon was reportedly provided to him by a friend. Tony relates that, on the day preceding the alleged car jacking incident, he had "given" the gun to another of the suspected perpetrators and that he had stated that "whatever you do with it, you keep it." Tony added that this weapon was connected to the deaths of the people involved and has been confiscated by law enforcement officials. He further divulged that, in addition to the above noted charges, he was also charged with "five counts of Assault with a Deadly Weapon." These charges reportedly stemmed from Tony's involvement in a gang related drive-by shooting. He was unable to clarify if

Tony Sparks
Page 3

anyone had been seriously injured and was generally nonchalant in discussing this incident. Prior criminal involvement was reportedly limited to a Burglary of a Habitation charge in which he stole a bicycle at fifteen years of age. He reportedly served a six-month probationary sentence in relation to this charge. Tony reportedly failed to comply with various probationary stipulations. One particular incident was described in which he did not comply with mandated curfew, engaged in a physical altercation and "ran from the police." Tony consistently minimizes his involvement in criminal actions and he tends to present himself as having been an uninformed, innocent bystander. He has been incarcerated in a Killeen juvenile detention facility for approximately four months, during which time it has been necessary to confine him to his cell on several occasions as a result of gang related confrontations.

When questioned regarding his understanding of the legal process, Tony demonstrated knowledge of basic courtroom procedures and legal roles. He was capable of describing the duties of a jury and the defending and prosecuting attorney. Tony is aware that his attorney is available to support and defend him; however, he perceives his own legal counsel with some degree of distrust, stating "sometimes he acts like he don't want to help me." He is further aware of the potential consequences of criminal actions, specifically he relates that he himself could be provided with a life sentence if convicted. When presented with an unfamiliar concept, Tony was able to benefit from instruction and clarification as provided by this examiner. As such, he would likely be capable of benefitting from the assistance and guidance of legal counsel.

A review of medical and developmental history revealed that Tony is free of significant illness or physical anomaly. At present, there are no prescribed medications in use and there have been no corrective surgeries. Tony describes a heterosexual orientation and indicates having engaged in unprotected sex with several individuals. Accidental injuries have been of a minor nature, with no history of head injury. Tony reports that he consumes alcohol, specifically a 40 oz. beer or gin, approximately two times per week. He occasionally drinks to the point of intoxication. He has reportedly abused marijuana in the past and has experimented with LSD on one occasion. A childhood history of physical and sexual abuse was denied. This is Tony's first experience with psychological evaluation or related treatment services. At eight years of age, Tony was reportedly placed outside of his home in Germany for a two year period. Tony maintains that he was removed because "I was acting up", which included acts of vandalism, shoplifting and physical violence. He describes residing in a

Tony Sparks
Page 4

"village" composed of various homes for children with behavioral difficulties. Although this environment appears to be reminiscent to U.S. psychiatric treatment centers, Tony could not recall having received any counseling or psychiatric treatment while in this setting. Educationally, Tony was most recently enrolled as a tenth grade student at Killeen High School, where he attended regular classes. He was reportedly retained in the fourth grade. Numerous suspensions were reported for fighting and disruptive behaviors. Tony indicates that he was expelled twice in the ninth grade in relation to gang related behaviors and involvement in gang "riots." Tony displays little motivation to complete his academic career. He has reportedly considered attending college only to participate in collegiate sports. Additionally, Tony states that he has considered pursuing a career in the United States military in an attempt to emulate his father. Employment history has been limited to work as a cook at Pizza Now and Bruno's Pizza in Killeen. Tony relates that he was compensated for his services "under the table." A familial history of psychiatric disorder, mental retardation, significant substance abuse and criminal involvement was denied. Major medical problems were limited to a history of cardiovascular disease for Tony's maternal grandfather.

Tony is an only child. His biological father is African-American and his mother is German. The couple met in Germany, where Mr. Sparks was stationed with the U.S. Army. They were never legally married and eventually separated when Tony was five years of age. Following their separation, Tony remained with his mother and continued to have contact with his father on a regular basis. He resided with his father for a one year period following his discharge from the previously cited "village." Tony readily notes that he is more obedient when in his father's care. His mother met and married another U.S. soldier and the family relocated to Fort Hood when Tony was 12-years-old. Tony describes a positive relationship with both his mother and his stepfather. It appears that his mother may be lenient in her use of discipline and his stepfather is unavailable at this time as he is currently stationed in Germany. His mother remained in the States to maintain the family household and to retain her employment with Rainbow Carpets. Tony's father has retired from the Army and he is presently employed as security supervisor at Ram Stadium in Illinois. Tony reports that it is his intention to reside with his father should he ultimately be released from jail. Despite Tony's presentation of his family as being caring and involved, it should be noted that adolescents often associate with gangs in an attempt to obtain a sense of unity and acceptance which is otherwise unavailable in their homes.

Tony Sparks
Page 5

Socially, Tony relates that he associates primarily with other gang members. He reportedly has "two or three girlfriends" with whom he maintains an intimate relationship. Tony reports enjoying "chilling", swimming and watching movies as favorite leisure time activities. His sense of self-worth has diminished of late, reportedly due to his current incarceration. As such, Tony is displaying a degree of situational depression which appears to be entirely related to the loss of an independent, unsupervised lifestyle. He relies heavily upon his peers for feedback and support. Tony appears to be easily influenced by others and he is highly susceptible to peer pressure. When discussing the topic of death and murder, Tony remained quite detached. He demonstrates little regard for human life and would experience difficulty in recognizing the rights, thoughts and feelings of others. By his own report, Tony is easily angered and is rarely sad. Manipulative and deceptive behaviors are utilized primarily as a means of self-preservation. Tony relates that he has recently began reading the Bible while incarcerated. Moral and ethical development is primitive and Tony may tend to manipulate his beliefs in an attempt to justify his behaviors. Tony displays a strong gang mentality in which violence and intimidation is an acceptable means of solving problems. Personal needs are placed above the needs of others and there is a strong tendency to infringe upon the rights of others.

An adequate degree of rapport was established and evaluation proceeded without complication or complaint. There was no indication of test related anxiety or apprehension. Tony appeared to be physically comfortable in the testing setting and his continued physical restraint did not appear to impede his test performance. Coordination, gait and posture were unremarkable, with activity level being well controlled. Tony was able to focus his attention on the tasks presented to a sufficient extent to permit accuracy of assessment. Impulsive traits were evidenced and Tony often appeared to respond to test items without deliberation. He readily conceded to failure. Praise and encouragement were accepted without comment. Speech was characterized by poor grammar and frequent mispronunciations. Tony responded in a soft tone of voice and, as such, clarification was necessary on a number of occasions. He was sufficiently adaptable to handle the diversity of task demands and was generally organized in his approach to problem solving.

Formalized testing was initiated with the administration of the Bender Visual Motor Gestalt Test so as to screen for perceptual motor functioning. This device is used primarily for screening and, if more conclusive data is desired, further testing is essential. Tony replicated the nine geometric patterns presented

Tony Sparks
Page 6

within 3 minutes and 25 seconds, which is considered to be a slightly abbreviated amount of time. The size of the designs drawn were somewhat reduced when compared to the size of the stimulus card patterns. This indicates a tendency toward withdrawal. The designs were placed on the page in an irregular format. Line quality was consistent which suggests normative motor coordination. Limited concern for quality was demonstrated, although visual contact with the stimulus cards was of appropriate duration. There was no observable effort at self-correction. Replication errors were limited to closure difficulty, substitution and overlapping difficulty. From the standpoint of personality implications, the protocol suggests that Tony displays impulsive and immature characteristics. His behaviors may be characterized by a lack of inhibition with possible aggressive, acting out potential. He may experience difficulty in completing tasks due to self-doubt and insecurity. Difficulties in interpersonal relationships are anticipated due to insensitivity and behavioral unpredictability. There is no indication of significant perceptual motor difficulties and Tony would likely experience success in performing precise visual motor tasks. Assessment of short term recall for visual stimuli was conducted utilizing the Memory Bender Test. Tony recalled four of the nine designs from memory with a reasonable degree of accuracy. This quantity and quality of short term recall for visual stimuli is considered average and suggests that his memory for events and circumstances in his everyday life would be accurate. Overall, the Bender suggests that Tony may tend to engage in impulsive behaviors without regard for their consequences.

Assessment of intellective functioning was conducted utilizing the Kaufman Brief Intelligence Test. Tony's response to the intellective assessment was impatient and without concern for success. He readily conceded to failure. With 100 being considered normative and a standard deviation of 15, Tony achieved the following standard scores, percentiles and descriptive categories:

|            | STANDARD SCORES | PERCENTILES | DESCRIPTIVE CATEGORIES |
|------------|-----------------|-------------|------------------------|
| Vocabulary | 69              | 2           | Lower Extreme          |
| Matrices   | 97              | 42          | Average                |
| Composite  | 81              | 10          | Below Average          |

As noted by the scores above, Tony achieved a Vocabulary IQ score of 69, which is in the Lower Extreme range, and a Matrices IQ score of 97, which is in the Average range. The difference between these

Tony Sparks
Page 7

scores is considered to be statistically significant at the .01 level. Discrepancies of this magnitude are often suggestive of learning disabilities. The resulting Composite IQ score of 81 is in the Below Average range of intellective functioning. This score equals or exceeds that of only 10 percent of the population and meets the criteria necessary for a diagnosis of Borderline Intellective Functioning.

Assessment of academic achievement was conducted utilizing the Wide Range Achievement Test - Revised Level III. Tony achieved the following standard scores, percentiles and grade equivalents:

|  | STANDARD SCORES | PERCENTILES | GRADE EQUIVALENTS |
|---|---|---|---|
| Reading | 80 | 9 | Fifth Grade |
| Spelling | 75 | 5 | Fourth Grade |
| Arithmetic | 83 | 13 | Sixth Grade |

These scores indicate that Tony possesses uniform academic deficits in relation to his achieved educational level. He would likely benefit from specialized programming if such has not been implemented. The intellective and academic assessments yielded scores which are relatively congruent. Based upon observed behavior and the general nature of the test responses, it is this examiner's opinion that the achieved intellective and academic scores are truly indicative of Tony's current level of functioning. These scores further suggest that Tony would experience difficulties in most endeavors requiring average intellectual skills. Vocational training would be most realistic for Tony and he may perform optimally in those areas which require tactile skill.

Personality assessment was conducted utilizing the Beck Depression Inventory, Thematic Apperception Test (Selected Cards), Personality Inventory for Youth and Clinical Interview Technique. Tony's response to the projective test battery remained listless. He responded guardedly to the need for self-disclosure. Qualitatively, his projective test responses were consistent with his stated intellective level. Tony's responses to the Beck Depression Inventory indicate the presence of moderate depressive symptomatology with limited risk of self-destructive behavior. Items endorsed on the Beck suggest feelings of disappointment and emotional detachment. Sleep disturbance was noted. Although Tony indicated that he feels that he is being punished, he denies any feelings of guilt or discouragement. As previously noted, it is likely that Tony's depression is situational in nature and would

Tony Sparks
Page 8

dissipate upon his release from incarceration. When presented with the stimulus cards for the Thematic Apperception Test, Tony provided scenarios which were based primarily on his perception of the obvious physical cues. The stories he developed were provided in the present tense and were typically left unresolved. Tony was able to perceive conventional role and generational boundaries; however, he failed to include any type of family interaction in his stories. The stimulus cards which typically evoke sexually oriented material were not acknowledged as containing such. Tony's TAT stories contained themes of violence and pessimism. The characters were awaiting "bad news" in two stories. There was a tendency to project responsibility for personal failures. Utilizing the themes presented, it appears that Tony perceives his environment as being uncaring and unfulfilling. He appears to anticipate disaster rather than success. The simplistic quality of Tony's stories further suggest that he may tend to perceive his environment in concrete terms.

The Personality Inventory For Youth was administered so as to gain further insight into personality functioning. Tony's validity scales are considered to be valid and suggested that he was responding to inventory items in a cooperative, consistent and nondefensive manner. The resulting clinical profile appears to be an adequate indication of his present personality functioning. An analysis of the PIY scales revealed no significant elevations. However, Tony obtained several scores just below significant levels and it is relevant to explore these areas. Such scores were obtained in the Impulsivity and Distractibility, and Delinquency Scales. Individuals with elevations on these scales are considered to be impatient, impulsive and unable to delay immediate gratification. They exhibit poor planning and organizational skills. Judgement is poor and there is an inability to learn from past mistakes. These individuals experience difficulty in complying with parental and societal rules and there is an increased likelihood of familial, academic and legal problems. They associate primarily with others who display similar characteristics. In summary, the PIY appears to suggest the presence of antisocial traits.

SUMMARY AND CONCLUSIONS:

Tony Sparks is a 16 year, 4 month old Biracial male who was Court Ordered to participate in psychological evaluation relation to criminal proceedings. Tony is currently confined in a Killeen juvenile detention center. He was somewhat vague and unspecific when describing his alleged offenses, stating that he is being

Tony Sparks
Page 9

charged with "juvenile delinquency, Car Jacking and Aiding and Abetting." He denies being charged with Murder. Tony refused to discuss details regarding these charges upon his attorney's advice. He conveyed basic knowledge of Court proceedings, including the role of the judge, jury and defending and prosecuting attorneys. Tony was aware of the consequences of criminal actions and he indicates that his attorney has informed him that his maximum punishment could be a life sentence. When presented with unfamiliar concepts, Tony was able to learn from the instruction provided by the examiner and he was capable of grasping basic concepts in this manner. As such, he would be able to benefit from legal counsel and would be capable of contributing to his defense.

Tony presents as being an emotionally detached and withdrawn adolescent. He describes a lifestyle characterized by impulsive and risk taking behaviors. Tony acknowledges association with the "Bloods" gang and he readily describes gang related altercations. It should be noted that, in addition to the above noted charges, Tony relates that he is also being charged with five counts of Assault with a Deadly Weapon. These charges reportedly relate to Tony's involvement in a gang related drive-by shooting. Tony admits that he has previously carried a firearm for protection and that his firearm was reportedly connected to the deaths of the individuals involved in the alleged car jacking. However, he denies any responsibility for these events and maintains that he had "given" the weapon to another alleged perpetrator on the day proceeding the incident. Tony appears to be strongly associated with the gang lifestyle and he readily accepts violence as a viable means of conflict resolution. He displays little concern for the rights of others and is highly self-serving. Tony appears to have received limited supervision within the home and he may utilize gang association as a means of obtaining personal recognition.

Test data suggest the presence of antisocial traits. Tony is impatient, impulsive and unable to delay immediate gratification. Judgement is poor and Tony experiences difficulty in learning from his actions. He lacks appropriate inhibition and may engage in aggressive acting out behaviors as a means of concealing self-doubt and insecurity. Intellective functioning is within Borderline ranges. Academic functioning is similarly deficient, possibly due to learning disability, insufficient motivation and/or a lack of environmental stimulation. A moderate level of depression was noted; however, this depression appears to be situational in nature and would likely dissipate upon Tony's release from incarceration. It was noted that Tony denies any feelings of guilt, although he perceives that he is being punished for his actions. Moral and

Tony Sparks
Page 10

ethical development is primitive, at best, and Tony may tend to manipulate his moral standards to accommodate his immediate needs. Tony receives little satisfaction from his environment. Although he provides a positive description of his family life, it is noteworthy that he continues to associate with a gang. Gang involvement is often utilized as a means of achieving a sense of belonging or recognition which is otherwise absent within one's environment.

Based upon the history and evaluation data presented in this report, it appears that Tony comprehends the nature of the charges against him and that he is aware of the potential consequences of these charges. He is capable of assisting in his defense. Due to Tony's cognitive deficits, he should be provided simplistic, concrete guidance during legal counsel. Tony demonstrates obvious violent potential and would be considered a potential threat to the safety of others. He may benefit from participation in anger management classes so as to explore more socially acceptable and constructive problem solving skills. Such instruction may be better received if provided in an individual, rather than group setting. This is suggested due to Tony's susceptibility to the negative influence of his peers and his obvious desire to gain their approval. The prognosis for effective utilization of treatment is guarded.

James N. Shinder, Ph.D., M.P.H.       Date: 10/15/99

JNS/rbn