IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | CAPITAL CASE |
| v. | § | NO. W-99-CR-00070(1) |
| | § | Execution Date: Sept. 24, 2020 |
| CHRISTOPHER ANDRE VIALVA. | § | |

**MOTION TO ENJOIN THE FEDERAL BUREAU OF PRISONS
AND UNITED STATES MARSHALS SERVICE FROM
EXECUTING DEFENDANT WITHOUT LEGAL AUTHORITY
AND IN VIOLATION OF FEDERAL AND TEXAS LAW
WITH BRIEF IN SUPPORT**

TO THE HONORABLE COURT:

Defendant Christopher Vialva moves this Court pursuant Title 28, United States Code, Section 1651(a) to enjoin the Federal Bureau of Prisons and the United States Marshals Service from executing Mr. Vialva September 24, 2020, in violation of federal and Texas law. Mr. Vialva is confined in the custody of the United States. He is housed at the Federal Correctional Complex in Terre Haute, Indiana (USP Terre Haute).

On July 31, 2020, T.J. Watson, the Warden of USP Terre Haute, delivered a letter to Christopher Vialva purporting to inform him that "a date has been set for the implementation of your death sentence, pursuant to the Judgment and Order issued on June 16, 2000." *See* Ex. 1. The letter states the Director determined Mr. Vialva should be executed September 24, 2020.

On July 31, 2020, the United States Attorney filed a "Notice Regarding Execution Date" in the district court stating, "The United States hereby notifies the Court that the Director of the Federal Bureau of Prisons, upon the direction of the Attorney General, has

scheduled the execution of Christopher Andre Vialva, in accordance with 28 C.F.R. Part 26, to take place on September 24, 2020." Notice Regarding Execution Date, *United States v. Vialva*, No. 6:99-cr-00070 (W.D. Tex. July 31, 2020) (Doc. 673).[1] Neither the judgment entered June 16, 2000, nor 28 C.F.R. Part 26, nor any other federal law presently empowers the Attorney General, United States Marshals Service, or the Bureau of Prisons to unilaterally set and carry out an individual's execution.  There are several reasons why theses federal officials and agencies lack such authority.

First, the June 16, 2000 judgment the district court entered sentencing Mr. Vialva to death—relied upon in Warden T.J. Watson's letter as the source of authority for executing Mr. Vialva on a date of the Director's choosing—is currently stayed by the judgment's own terms. Second, although the June 16, 2000 judgment permitted the Attorney General to determine the "time, place and manner of execution," that authorization—even were it thought adequate under federal law to empower execution—is long expired by the judgment's own terms. Third, federal law—including the Department of Justice regulations purportedly being relied on—requires the issuance of an execution warrant in order for a United States Marshals to lawfully execute a person sentenced to death by the judgment of a federal court, and no such warrant or order directing the execution to occur has issued by the Court. Fourth, the Bureau of Prisons'

---

[1] Counsel received notice of this filing August 14, 2020. *See* Ex. 2.  It appears the undersigned counsel was removed from the Court's Electronic Case filing system.  Counsel has been advised the problem is now resolved.

threatened action does not conform to Texas law implementing death sentences, a requirement of both federal law and the terms of the June 16, 2000 judgment.

## I.    THERE IS PRESENTLY A STAY OF EXECUTION IN PLACE

The June 16, 2000, judgment provided that, "[i]f an appeal is taken from this conviction and sentence, execution of the sentence shall be stayed pending further order of this Court upon receipt of the mandate of the Court of Appeals." Judgment in a Criminal Case at 2, *United States v. Vialva*, No. 6:99-cr-00070 (W.D. Tex. June 16, 2000) (Doc. 289) [hereinafter "Judgment"]. Mr. Vialva appealed his convictions and sentences thereby staying the judgment pending further order of the district court. *United States v. Bernard*, 299 F.3d 467 (5th Cir. 2002). No further order ever issued from the district court. Accordingly, the district court's June 16, 2000, judgment is currently stayed by its own terms, and the Director of the Federal Bureau of Prisons may not act in contravention of it.

## II.    THE JUNE 16, 2000, JUDGMENT DOES NOT AUTHORIZE THE ATTORNEY GENERAL OR BUREAU OF PRISONS TO FIX SEPTEMBER 24, 2020, AS THE DATE OF EXECUTION

The June 16, 2000, judgment provided that the Attorney General determine the "time, place and manner of execution," but it did so only expressly "provided [that] the time shall not be sooner than 61 days nor later than 90 days after the date of this judgment." Judgment at 2. As it is well past 90 days from June 16, 2000, this delegation of authority to the Attorney General in the judgment is long expired. The June 16, 2000, judgment therefore provides no authority for the Attorney General or the BOP to determine the time, place, and manner of execution.

### III.    UNDER FEDERAL LAW, THE MARSHAL IS NOT EMPOWERED TO SUPERVISE AN EXECUTION ABSENT AN EXECUTION WARRANT OR ORDER FROM THE COURT OF JUDGMENT FIXING THE DATE OF EXECUTION AND DIRECTING THE MARSHAL TO CARRY IT OUT

Federal law requires the issuance of a warrant to empower and direct a marshal to carry out or supervise an execution. Historically, there was some confusion about how sentences of death pronounced in federal judgments were to be implemented, as Congress had not prescribed any rules governing them beyond specifying that "the manner of inflicting the punishment of death, shall be by hanging the person convicted by the neck until dead." Crimes Act of 1790, ch. 9, § 33, 1 Stat. 112, 119. Specifically, the confusion was about whether the court of judgment or the President would issue a warrant or order fixing a date of execution and directing a marshal to conduct it. What was never in dispute was that a warrant or order must issue.[2]

In 1818, United States Attorney General Wirt wrote to Secretary of State John Quincy Adams asking him to bring to President James Monroe's attention the need to issue

---

[2] In the case of Thomas Bird, the first federal execution since the establishment of the federal courts, the Hon. David Sewall issued a "Writ or Warrant of Execution from the District Court to the Marshall" to carry out Thomas Bird's death sentence "at the Time mentioned in the Judgment . . . ;" Mr. Bird was executed June 25, 1790. See "To George Washington from Thomas Bird, 5 June 1790," n.1, Founders Online, Nat. Archives, available at https://founders.archives.gov/documents/Washington/05-05-02-0299. (last visited Aug. 1, 2020) [Original source: The Papers of George Washington, Presidential Series, vol. 5, 16 January 1790–30 June 1790, ed. Dorothy Twohig, Mark A. Mastromarino, and Jack D. Warren. Charlottesville: University Press of Virginia, 1996, pp. 478–481.] Similarly, in the last execution carried out before the Supreme Court invalidated death penalty statutes in *Furman v. Georgia*, 408 U.S. 238 (1972), the district court ordered, on November 2, 1963, that "subject to interposition of executive clemency, said imposed death sentence by hanging scheduled for January 15, 1963 at approximately 5:30 a.m. at Iowa State Penitentiary at Fort Madison, Iowa." Docket Sheet, *United States v. Victor Feguer*, No. 7-6031 (N.D. Iowa).

a warrant of execution for individuals sentenced to death by a federal court in Maryland. 1 U.S. Op. Att'y. Gen. 228 (1818). Supreme Court Justice Duvall, a former Maryland state court judge, had written to Attorney General Wirt because he heard President Monroe believed that it was the court's duty "to fix the day for the execution." *Id*. Justice Duvall thought it was the President's duty to issue a warrant in that particular case, because the law of Maryland required its Governor, rather than its courts, to issue execution warrants. *Id*.

Noting that there was no law passed by Congress on the subject, Attorney General Wirt observed "that the courts of the United States have adopted, in this particular, the practice of the State courts in which they hold their sessions, and these are various: death-warrants from the governor being required in several of the States; and in others the courts fixing the day." *Id*. Attorney General Wirt explained while it would be "desirable that there should be a uniform rule to guide the conduct of the President in this respect," only Congress could prescribe such a rule. *Id*. Attorney General Wirt concluded that as long as the courts were following state law for the implementation of death sentences, "the President must, of necessity, to give effect to our laws, follow that which the courts have adopted: that is, issue warrants for execution in all cases where they are made necessary by the practice of the State in which the sentence is passed." *Id*.

Thus, near the founding of the Nation, the judicially developed rule for implementing federal executions emerged that, when Congress has been silent, executions must be implemented in the manner prescribed by state law, *including that state's warrant*

*requirements.*[3] For death judgments from federal courts sitting in jurisdictions where state law required the court to order the execution and fix the day, the federal court would issue an execution warrant or order. For death judgments from federal courts sitting in jurisdictions where state law required the governor to issue an execution warrant, the President would be required to issue an execution warrant fixing the day and directing a marshal to conduct the execution.

Although Congress has remained silent on this specific question, it has generally adopted the long-established rule of implementing federal death sentences in the same manner as the state in which they sit: "When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). The same rules governing how executions are implemented expressed by Attorney General Wirt in 1818 still apply today. As historical practice and Attorney General Wirt's opinion make clear, it is the order or warrant issued by the court or, where necessary to conform to

---

[3] The circumstances prompting Justice Duvall to inquire of the Attorney General were quite dire. Attorney General Wirt reported that "the case has become one of great emergency; for the convicts, finding that they are not to be pardoned, have become desperate, and have once actually broken the prison and made their escape: but they have been retaken. They will, however, unquestionably attempt it again, and probably with more success, unless they should be guarded at an enormous expense to the United States." 1 U.S. Op. Att'y. Gen. 228 (1818). Despite the dire circumstances, the judiciary steadfastly adhered to the warrant requirements of Maryland state law, causing Attorney General Wirt to convey to the Secretary of State "the necessity of drawing the President's immediate attention to this subject." *Id.* at 229.

state law, by the President, that determines and fixes the date for "[w]hen the sentence is to be implemented." *Id*.

The Department of Justice's regulations are consistent with this understanding. In 1993, the Department issued rules for "Implementation of Death Sentences in Federal Cases." These are the same rules the United States Attorney cited in the "Notice Regarding Execution Date" filed with the district court. *See* 58 Fed. Reg. 4898-01 (Jan. 19, 1993) (codified at 28 C.F.R. pt. 26). The rules went into effect February 18, 1993, and clearly reflect the Department's understanding that the Bureau of Prisons' authority to execute under a marshal's supervision derives from the federal court directing it to occur.

Section 26.2 of the regulations, entitled "Proposed Judgment and Order," provides, "Whenever this part becomes applicable, the attorney for the government shall promptly file with the sentencing court a proposed Judgment and Order. " 28 C.F.R. § 26.2(a). The regulations further provide, "The attorney for the government shall append to the proposed Judgment and Order a Return by which the designated United States Marshal may inform the court that the sentence of death has been executed." *Id*. § 26.2(b). The rules unambiguously require a warrant or order of the court directing a marshal to conduct the execution.

In response to a comment during the rulemaking process challenging the Department's Congressional authority to make the rules, the Department stated that no such problem existed. The Department maintained its rules were not based on Congressional authorization, but depended on an execution warrant or court order:

> As for the Justice Department's "delegated authority," the Department does not need explicit authority to issue regulations establishing death penalty procedures. The Department is authorized to rely on the authority of the federal courts, acting pursuant to the All Writs Act, 28 U.S.C. 1651(a), *to order that their sentences be implemented*. Thus, § 26.2 directs the government's attorney in a capital case to file with the court a proposed Judgment and Order consistent with the regulations.

58 Fed. Reg. 4898-01, 4899-900 (emphasis added). The Department did not need Congress to delegate authority to set execution dates because its authority came from the courts when they issued the necessary orders fixing the date and directing the execution to occur. Thus, the regulations "direct[] government attorneys to seek a court order" that empowers and directs a marshal to conduct the execution. 58 Fed. Reg. 4898-01, 4900.

No order was sought or obtained by the United States from the court ordering implementation of the death sentence for Mr. Vialva. No such order was entered by the district court.

Because the June 16, 2000, judgment does not supply the necessary authority to execute the death sentence in this case, no marshal has been empowered by any court to carry out or supervise Mr. Vialva's execution. Neither the Attorney General nor the Bureau of Prisons has any power to direct a marshal to conduct an execution of any individual. In this case, *see infra*, only the court has that authority under federal law. Accordingly, the Bureau of Prisons presently has no legal authority to execute Mr. Vialva on September 24, 2020, and it should be enjoined from doing so to prevent a lawless execution.

**IV.   THE BUREAU OF PRISONS' ACTIONS DO NOT CONFORM TO TEXAS LAW AS REQUIRED BY FEDERAL LAW AND THE JUNE 16, 2000, JUDGMENT**

8

The June 16, 2000, judgment requires that Mr. Vialva's execution be carried out "in the manner prescribed by the laws of Texas." Judgment at 2. This conforms to federal law, discussed *supra*, requiring that death sentences be "implement[ed] . . . in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a).[4] The Bureau of Prions' expressed intent to execute Mr. Vialva on September 24, 2020, disregards Texas law that governs the implementation of death sentences, including statutory warrant requirements, in derogation of federal law and the June 16, 2000 judgment. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 135 (D.C. Cir. 2020) (Rao, C.J., concurring), *cert. denied sub nom. Bourgeois v. Barr*, No. (19A1050), 2020 WL 3492763 (U.S. June 29, 2020). ("In this politically charged area, Congress enacted a federalist scheme, incorporating state law as to the 'manner' of death penalty implementation, but only for those execution procedures enacted or promulgated by states as part of their binding law.").

First, Texas law requires that a *court* enter an order setting the date of an execution to effectuate a death sentence. *See* Tex. Code Crim. Proc. art. 43.141. Second, Texas law requires that "[a]n execution date may not be earlier than the 91st day after the date the convicting court enters the order setting the execution date." *Id*. art. 43.141(c). Third, Texas law requires that a court issue an execution warrant under the seal of the court authorizing

---

[4] The Attorney General has tacitly acknowledged the applicability of the statute and its impact on the execution process. In an apparent effort to circumvent the statute, the Attorney General has proposed a regulation through the Administrative Procedures Act process. See Ex. 3, 85 Fed. Reg. 47324 (Aug. 5, 2020).

and directing the relevant authority to carry out the execution. Tex. Code Crim. Proc. art. 43.15(a). The warrant must "recite the fact of conviction, setting forth specifically the offense, the judgment of the court, and the time fixed for the execution." *Id*. A certified copy of this warrant must be given to the official that it directs to conduct the execution. *Id*. Additionally, a copy of the court order fixing the date and time for execution and the warrant directing the relevant official to execute must be served on counsel for the defendant. Tex. Code Crim. Proc. art. 43.141(b-1)(1) & 43.15(b)(1). *See also In re Carter*, 541 S.W.3d 743, 744–45 (Tex. Crim. App. 2017) (Newell, J., concurring) ("The Texas Legislature intended Article 43.141 to provide death-penalty defendants with a significant time period within which to prepare final pleadings in either state or federal court. It clearly intended these notice requirements to facilitate that objective.").

None of these things have occurred in this case. There has been no court order setting a date of execution that conforms to Texas law, as required by federal law and practice since the founding of the country. No execution warrant has issued under the court's seal directing the relevant official to conduct the execution on a date and time specified, and no lawyers for Mr. Vialva have been served with these papers. Any execution occurring in Texas under the circumstances present here would be blatantly illegal.

## CONCLUSION

The deficiencies in the procedure adopted by the Director of the Bureau of Prisons, apparently at the behest of the Attorney General of the United States, are contrary to controlling federal law and Texas state law.  These are not merely technical or clerical

errors.  Mr. Vialva was provided with a letter from the Warden informing him he would be executed in 55 days.  The difference between the Director's selection of an execution and a date conforming to the requirements of Texas law are patently substantial.  The injury to Mr. Vialva resulting from the violation of the law is quintessentially irreparable. Counsel request this Court enter an order enjoining the Bureau of Prisons from executing Christopher Vialva until it has the legal authority to do so and in a manner that comports with federal and Texas law.

Respectfully submitted,

s/Susan M. Otto
SUSAN M. OTTO
Oklahoma Bar # 6818
Federal Public Defender
MICHAEL LIEBERMAN
Oklahoma Bar #32694 (pro hac vice forthcoming)
Assistant Federal Public Defender
Western District of Oklahoma
215 Dean A. McGee Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930
Electronic mail: Susan_Otto@fd.org;
Michael_Lieberman@fd.org

COUNSEL FOR DEFENDANT
CHRISTOPHER ANDRE VIALVA

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Mark Frazier
Assistant United States Attorney
800 Franklin, Suite 280
Waco, Texas 76701
Counsel for Plaintiff

Rob Owen
Law Office of Robert C. Owen, LLC
53 W. Jackson Blvd., Suite 1056
Chicago, IL 60604

John Carpenter
Assist. Federal Public Defender
1331 Broadway, Ste. 400
Tacoma, WA 98402
Counsel for Brandon Bernard

s/Susan M. Otto
SUSAN M. OTTO

12