UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

    v.

BRANDON BERNARD,
    Defendant.

CAPITAL CASE
NO. 6:99-CR-00070-ADA-2
Execution Date: Dec. 10, 2020

**GOVERNMENT'S RESPONSE TO MOTION TO ENJOIN
THE GOVERNMENT FROM EXECUTING BRANDON BERNARD
UNTIL APPEALS ARE COMPLETE**

The Court should deny defendant Brandon Bernard's motion to enjoin the government from carrying out his execution—currently scheduled for December 10, 2020—"until [his] appeals are complete." (Doc. 706 at 1.) Bernard does not have any pending appeals. The Fifth Circuit declined to authorize his most recent request to file a second or successive motion to vacate his conviction under 28 U.S.C. § 2255, and that decision is not subject to certiorari review by the Supreme Court (nor has Bernard sought any such review). 28 U.S.C. §§ 2244(b)(3)(E), 2255(h). Bernard is also wrong to contend that 18 U.S.C. § 3596(a) prevents his execution from going forward on December 10. Bernard has already fully exhausted "the procedures for appeal of the judgment of conviction and review of the sentence." 18 U.S.C. § 3596(a). Indeed, his sentence has been upheld on direct appeal and in multiple rounds of collateral review.  His apparent plan to file yet another certiorari petition does not warrant an injunction. He does not even attempt to satisfy the standard for granting an injunction pending certiorari, and his underlying *Brady* and *Napue* claims are baseless. Additionally, the balance of equities strongly favors allowing Bernard's lawful sentence, imposed for crimes he committed more than two decades ago, to be carried out without further delay. His motion should be denied.

**BACKGROUND**

**A.      The Murders of Todd and Stacie Bagley**

In 1999, Bernard and other members of a street gang in Killeen, Texas, carjacked and murdered Todd and Stacie Bagley. *See United States v. Bernard*, 299 F.3d 467, 471–73 (5th Cir. 2002). Gang members—including Christopher Vialva and Tony Sparks—initially developed a plan to abduct and rob a motorist at gunpoint, use the victim's bankcard to make ATM withdrawals, and abandon the victim in a remote area locked inside his own car trunk. (*Id*. at 471.)

Bernard drove Vialva and the others from one store parking lot to another searching for a victim. *Bernard*, 299 F.3d at 471. After some time, Bernard temporarily departed. (*Id*. at 472 & n.2.) Vialva and two other gang members then convinced the victims, Todd and Stacie Bagley, to give them a ride. (*Id*. at 471–72.) After the gang members entered the Bagleys' car, they robbed the Bagleys at gunpoint with Bernard's gun, forced the Bagleys into the trunk of their own car, and attempted to empty the Bagleys' bank account from multiple ATMs. (*Id*.)

After Bernard and a fifth gang member rejoined the group, Vialva explained that he had to kill the Bagleys because they had seen his face. *Bernard*, 299 F.3d at 472. At Vialva's direction, Bernard and another gang member went to purchase accelerant to burn the Bagleys' car. (*Id*.) Sparks went home to avoid missing his curfew. (*Id*. at 472 n.3.)

Vialva, Bernard, and the two other gang members then drove the Bagleys' car (with the Bagleys still in the trunk) and Bernard's car to a remote area on Fort Hood. *Bernard*, 299 F.3d at 472–73. Bernard and another gang member poured lighter fluid on the interior of the Bagleys' car, while the Bagleys sang and prayed in the trunk. (*Id*. at 472.) Vialva shot the Bagleys with Bernard's gun, killing Todd and rendering Stacie unconscious. (*Id*. at 472–73.) Bernard then set fire to the car, killing Stacie, who died of smoke inhalation. (*Id*. at 473.)

A federal jury in Waco found Bernard guilty of carjacking and murder and sentenced him to death for the murder of Stacie Bagley. *Bernard*, 299 F.3d at 473. The Fifth Circuit affirmed, *id.* at 489, and the Supreme Court denied certiorari, 539 U.S. 928 (2003).

**B.      Relevant Trial Testimony on Bernard's Role in the Gang**

During the penalty phase of the trial, Texas Ranger John Aycock testified about the gang's background and structure. (Doc. 317 at 111-13.) He described both Vialva and Sparks as "climbers" who attempted to elevate their status in the gang "with their boldness and things that they could do, their plans and their schemes." (*Id.* at 114.) Aycock testified that, in comparison, Bernard had a lesser role in the gang. (*Id.* at 125.) Aycock explained that while Vialva was described as the "scary" one in the group, Bernard was merely a "person who would assist and help" other gang members "and not run from a fight." (*Id.* at 114, 125.) Other witnesses denied that Bernard was a full-fledged member of the gang, testifying that he only "associated" and "hung around" with it. (*See, e.g.*, Doc. 312 at 239-40; Doc. 314 at 24, 31, 36, 43, 48-49, 135, 151; Doc. 317 at 110.)

**C.      Bernard's Prior Post-Conviction Proceedings**

In 2004, Bernard moved to vacate his sentence under § 2255. (Doc. 377 at 453–608). In his lengthy motion, Bernard argued that he was denied his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959). (Doc. 416 at 134-41.) Bernard did not claim that the government violated *Brady* or *Napue* with respect to the disclosure or presentation of evidence about his role in the gang.

This Court denied Bernard's motion. (Doc. 449.) The Court determined that Bernard's *Brady* and *Napue* claims were procedurally barred and lacked merit. (*Id.* at 14–15 & n.1, 22-26.)

The Fifth Circuit denied Bernard's motion for a certificate of appealability (COA). *United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014), *cert. denied*, 136 S. Ct. 892 (2016).

In 2017, Bernard filed an unauthorized second or successive § 2255 motion, styled as a motion under Federal Rule of Civil Procedure 60(b) for relief from the judgment in his initial § 2255 proceedings. (Doc. 569 at 1–63.) This Court dismissed the motion for lack of jurisdiction. (Doc. 573 at 1.) The Fifth Circuit denied a COA. *United States v. Vialva*, 904 F.3d 356, 358 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 859 (2020).

**D.      Tony Sparks's 2018 Resentencing**

Tony Sparks—who was a juvenile at the time of the offense—pleaded guilty to aiding and abetting the carjacking and was sentenced to life imprisonment. *See United States v. Sparks*, 31 F. App'x 156 (5th Cir. 2001). He was resentenced in 2018, after the Supreme Court held that a defendant cannot be sentenced to a mandatory term of life imprisonment without the possibility of parole for an offense committed as a juvenile. *See United States v. Sparks*, 941 F.3d 748, 752–53 (5th Cir. 2019); *Miller v. Alabama*, 567 U.S. 460 (2012).

At Sparks's resentencing, the government called former Killeen Police Department gang investigator Sandra Hunt to testify about Sparks's involvement in the gang and as an expert in gangs. (Doc. 656 at 92–95.) Hunt was only tangentially involved in the original investigation and was not listed on the government's witness list for Bernard and Vialva's trial. (Doc. 225 at 1-6; Doc. 265 at 1–2.) Hunt identified Sparks as a member of the gang based in part on a fellow gang member's hand-drawn diagram identifying the gang's members and structure. (Doc. 656 at 92–95.) This diagram only listed gang aliases, so Hunt's gang unit created a second, nearly identical diagram that also identified the members by their true names. (*Id*. at 93–95.)

4

Hunt explained that Sparks was placed on the diagram in a row with "the enforcers or recruiters" for the gang. (Doc. 656 at 96–97.) Hunt testified that Sparks's position indicated that he "put in a lot of work" (crime on the gang's behalf) and "became a very trusted member of the group." (*Id*. at 98.) She further observed that the chart listed Sparks's co-conspirators in the Bagleys' murder, including Vialva and Bernard. (*Id*. at 97–98.) Hunt stated that Bernard was "at the very bottom of the chart of [the] pyramid . . . about 30 people below Mr. Sparks." (*Id*. at 98.)

E.    **Bernard's Third § 2255 Motion**

In February 2019, Bernard again sought to vacate his conviction pursuant to § 2255 and, alternatively, Rule 60(b), raising for the first time *Brady* and *Napue* claims based on Hunt's testimony at Sparks's 2018 resentencing and the diagram of the gang's membership. (Doc. 661.) Under § 2255(h), a "second or successive motion" must be dismissed unless a panel of the court of appeals certifies, as relevant here, that the motion is based on "newly discovered evidence that . . . would be sufficient to establish by clear or convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. § 2255 (h)(1); *see id.* § 2244(b)(3), (4). This Court construed Bernard's motion as a successive § 2255 motion (Doc. 664) and transferred it to the Fifth Circuit. *See United States v. Bernard*, 820 F. App'x 309, 310 (5th Cir. 2020) (per curiam) (unpublished).

On September 9, 2020, the Fifth Circuit affirmed this Court's transfer order with instructions to dismiss the § 2255 petition for want of jurisdiction. *Bernard*, 820 F. App'x at 311. The court agreed with this Court that Bernard's § 2255 motion was successive.  It reasoned that the "factual predicate for Bernard's claims . . . existed long before Bernard filed his first habeas petition." *Id.* The Fifth Circuit denied Bernard's petition for rehearing *en banc*. Order, No. 19-70021 (Nov. 6, 2020).

5

In a separate opinion also issued on September 9, 2020, the Fifth Circuit denied Bernard's motion for authorization to file a successive § 2255 motion. *See In re Bernard*, 826 F. App'x 356 (5th Cir. 2020) (per curiam). The court held that Bernard's motion to vacate based on the testimony from Sparks's hearing could not be authorized as a second or successive motion under § 2255(h)(1) because that evidence related only to his death sentence, not his guilt. *Id*. at 358. And the court observed that, in any event, "Bernard cannot establish that this evidence is 'newly discovered.'" *Id.* at 358 n.2. Bernard's claimed that the government "withheld information describing his role in the gang" and "presented false testimony as to that information," but he "offer[ed] no explanation why he would not have known what his role in his own gang was" and "all but admit[ted] he had such knowledge." *Id.* The court also rejected Bernard's request to recall the mandate of its previous denial of § 2255 relief, explaining that Bernard's *Brady* and *Napue* claims "were not previously raised" and that "this court may not recall its mandate to consider a claim that was not before it during the original proceedings." *Id.* at 359 (quotation omitted).

## LEGAL FRAMEWORK

Injunctive relief is "an extraordinary remedy." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a party must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the injunction will not disserve the public interest. *Jones v. Tex. Dep't of Crim. Just.*, 880 F.3d 756, 759 (5th Cir. 2018); *see, e.g.*, *Sells v. Livingston*, 750 F.3d 478, 480 (5th Cir. 2014) (per curiam) (same for motion to enjoin execution); *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012) (same for motion to stay execution).

6

Here, Bernard seeks an injunction specifically in order to file a petition for a writ of certiorari. (Doc. 706 at 7.) "Stays of execution are not automatic pending the filing and consideration of a petition for a writ of certiorari[.]" *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983); *see Netherland v. Tuggle*, 515 U.S. 951, 952 (1995) (per curiam) (observing that the Supreme Court has "rejected" the view "that a capital defendant as a matter of right [i]s entitled to a stay of execution until he has filed a petition for certiorari in due course"). To obtain a stay pending certiorari, a defendant must show "a reasonable probability that four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari" and "a significant possibility of reversal of the lower court's decision," in addition to irreparable harm. *Barefoot*, 463 U.S. at 895 (citation omitted).[1]

A defendant's inability to demonstrate a substantial likelihood of success on the merits "is, effectively, dispositive" of a request to enjoin an execution. *Crutsinger v. Davis*, 930 F.3d 705, 707 (5th Cir. 2019); *see Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020) (per curiam) (vacating injunction of scheduled execution on that basis).

## ARGUMENT

Bernard cannot satisfy his heavy burden of showing that he is entitled to an injunction preventing his execution pending his forthcoming petition for a writ of certiorari. First, he cannot show a substantial likelihood of obtaining certiorari, let alone succeeding on the merits, for his claim that this Court and the Fifth Circuit erred in treating his latest § 2255 motion as a second-or-successive motion barred by § 2255(h). The Fifth Circuit correctly decided that question, and its

---

[1] Indeed, because Bernard seeks an injunction to forbid his execution, rather than a stay of some existing order, the standard he must meet is even higher. An injunction pending further review "'demands a significantly higher justification' than a request for a stay." *Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010) (citation omitted). To obtain such relief, applicants must show "legal rights" that are "indisputably clear." *Wisconsin Right to Life, Inc. v. FEC*, 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers). But the precise showing he is required to make is immaterial here because Bernard cannot prevail under any applicable standard.

decision does not conflict with any decision of the Supreme Court or any other court of appeals. Second, Bernard has not shown a likelihood of success on his claim that 18 U.S.C. § 3596(a) bars carrying out his execution on December 10 as scheduled. Section 3596(a) does not prevent the government from scheduling or carrying out an execution while a defendant continues to pursue unauthorized second-or-successive § 2255 motions. Third, Bernard has not shown that the balance of equities favors precluding the government from carrying out his lawful sentence.

## I.  Bernard Has Failed to Show Any Likelihood of Certiorari or Success on the Merits.

Bernard contends that he has a "compelling argument that he should be allowed to litigate his *Brady* claim." (Doc. 706 at 7.) The Fifth Circuit, however, declined to authorize him to present that claim in a second-or-successive § 2255 motion. 826 F. App'x at 356. And Bernard cannot show a substantial likelihood that the Supreme Court will grant certiorari to review that claim because § 2244 expressly precludes such review: "The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E). Accordingly, Bernard's motion for an injunction should be denied because he has already litigated to exhaustion his effort to file a successive § 2255 motion raising the *Brady* claim.

To the extent Bernard plans (Doc. 706 at 7-8) to seek certiorari for the question whether the Fifth Circuit correctly characterized his latest § 2255 motion as second-or-successive, Bernard also fails to establish any substantial likelihood that such a petition would be granted, let alone that he would succeed on the merits. First, Bernard fails to explain why § 2244(b)(3)(E) would not also bar certiorari for that claim, which is effectively just a collateral attack on the Fifth Circuit's decision not to authorize his successive § 2255 motion. Although the Supreme Court has indicated that § 2244(b)(3)(E) does not preclude it from exercising its certiorari jurisdiction to review whether a particular filing is a "first" § 2255 motion or a successive one, *Castro v. United States*,

540 U.S. 375, 380 (2003), it has never extended that principle to circumstances like those here—where the defendant has indisputably already filed (and fully litigated) a first § 2255 motion, and the court of appeals later declines to authorize the defendant to file a successive one. At a minimum, the threshold jurisdictional question makes further review unlikely. Second, the Supreme Court is not likely to grant certiorari (much less reverse) even if § 2244(b)(3)(E) permits further review. This Court and the Fifth Circuit were plainly correct to treat Bernard's 2019 filing as a second-or-successive § 2255 motion. In general, a *Brady* claim concerning an alleged failure to disclose evidence for trial or sentencing is "ripe for inclusion in a first" § 2255. *Tompkins v. Sec'y, Dep't of Corrections*, 557 F.3d 1257, 1260 (11th Cir. 2009) (per curiam). That is true "regardless of whether the petitioner knew about the alleged suppression" when he filed his first § 2255 motion. *In re Will*, 970 F.3d 536, 540 (5th Cir. 2020) (per curiam) (discussing state habeas claim). If the defendant only discovers the alleged *Brady* material after that time, § 2255(h)(1) provides an avenue to file an *authorized* second-or-successive motion based on "newly discovered evidence," but Bernard does not claim to be able to meet the requirements of § 2251(h)(1).

Bernard errs in contending that the Fifth Circuit's determination that his motion was successive "conflicts" with *Panetti v. Quarterman*, 551 U.S. 930 (2007). (Doc. 706 at 7). The Fifth Circuit persuasively explained that "*Panetti* only reinforces [its] holding." *Bernard*, 820 F. App'x at 310. *Panetti* held that a capital prisoner's second-in-time habeas petition challenging his competency for execution was not "second or successive" because the claim was ripe only at the time of execution, after the petitioner's first habeas petition had been adjudicated on the merits. *Panetti*, 551 U.S. at 943–45. Those unusual circumstances make clear that *Panetti* is a narrow exception to the bar on successive habeas applications or § 2255 motions. Here, the purported *Brady* evidence about Bernard's position in the gang existed long before Bernard filed his first

9

habeas petition. The Court of Appeals correctly concluded that Bernard's claim was successive, and he cannot show a reasonable probability that the Supreme Court would grant certiorari, much less a "significant possibility of reversal." *Barefoot*, 463 U.S. at 895.

Bernard also errs in contending that the Fifth Circuit's decision conflicts with *Scott v. United States*, 890 F.3d 1239 (11th Cir. 2018). (Doc. 706 at 7–8.) In *Scott*, the Eleventh Circuit held that its precedent required treating a second-in-time habeas petition raising a *Brady* claim as second or successive (just as the Fifth Circuit did here), and the Supreme Court denied certiorari, *see* 139 S. Ct. 842 (2019)—undercutting any claim that Bernard is likely to obtain further review based on *Scott*. The other decisions Bernard cites also do not suggest any circuit conflict warranting Supreme Court review. In *Long v. Hooks*, 972 F.3d 442, 468 (4th Cir. 2020) (en banc), the Fourth Circuit did even not apply *Panetti*, having previously authorized the successive habeas petition under § 2244(b)(2)(B) as a claim of "actual innocence." Although the concurring judges questioned whether *Brady* claims should be "subjected to the strictures of 'second or successive' petitions," it recognized that they were under Fourth Circuit precedent. 972 F.3d at 485 (Wynn, J., concurring). And in *Allen v. Mitchell*, 757 F. App'x 482 (6th Cir. 2018) (unpublished), a dissenting judge argued that a habeas petition raising a *Brady* claim was not successive. *Id.* at 487 (Moore, J., dissenting). But the panel majority rejected the dissent's reading of *Panetti*. *Id.* at 484 n.1.

Bernard has thus failed to demonstrate that this case meets any of the Supreme Court's traditional criteria for granting certiorari, let alone that five Justices of the Supreme Court are likely to agree with his view on the merits. Those failings suffice to deny his motion.

## II.   Bernard's *Brady* and *Napue* Claims Lack Merit.

Bernard also fails to demonstrate any likelihood of success for any further litigation of his *Brady* and *Napue* claims, which are baseless. A crucial predicate for any *Brady* claim is that the

evidence at issue was not "disclosed to the defense." *Strickler v. Greene*, 527 U.S. 263, 280 (1999). Here, however, the government made its file fully available to Bernard's and Vialva's trial counsel for inspection. (Doc. 34 at 1; Doc. 36 at 1; Doc. 449 at 25; Doc. 320 at 33.) As part of this disclosure, the hand-drawn gang diagram was disclosed to the defense along with all other government exhibits. (*See* Doc. 266 at 1-10; Doc. 32 at 44; Doc. 311 at 252.) Likewise, the government did not withhold Sandra Hunt's testimony, which did not exist at the time of Bernard's trial. And Hunt was a local gang investigator only tangentially related to the capital prosecution in this case.

The government also had no duty to disclose information to Bernard about his own status in a gang. *See United States v. Vasquez-Hernandez*, 924 F.3d 164, 171 (5th Cir. 2019) (government "bears no responsibility to direct the defense toward potentially exculpatory evidence that is either known to the defendant or that could be discovered through the exercise of reasonable diligence") (citing *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004)). As the Fifth Circuit found, Bernard's own knowledge of his gang status would undermine his *Brady* claim even if it were not barred by § 2255(h). *Bernard*, 826 F. App'x at 358 n.2.

In any event, the jury already heard testimony that Bernard had a marginally lesser role than his co-defendant Vialva and that Bernard was a "person who would assist and help." (Doc. 317 at 125.) The jury heard, for example, that Vialva took a leadership role during the offense, including planning the carjacking with Sparks (Doc. 312 at 175-76); recruiting Bernard to participate (Doc. 314 at 149, 150-51, 153); selecting the gang member who would ask the Bagleys for a ride (Doc. 312 at 175); pulling out the gun and pointing it toward Todd Bagley's head (Doc. 314 at 158); demanding Todd Bagley's wallet (Doc. 314 at 159); threatening to kill the Bagleys if they did not provide the correct PIN number (Doc. 314 at 165-66); making the decision "to burn

11

the car and kill the people" (Doc. 312 at 192-93; Doc. 314 at 179-80); instructing Bernard to get the accelerant to "burn the car" (Doc. 312 at 194, 195-96, 200); directing another gang member to open the trunk (Doc. 312 at 211); and shooting Todd Bagley in the head (Doc. 312 at 213-14). Bernard's counsel argued during the penalty phase that this testimony demonstrated that Bernard was less culpable than Vialva and Sparks (Doc. 319 at 61), and the jury nonetheless imposed a capital sentence.

Sandra Hunt's 2018 testimony that Bernard was "at the very bottom of the chart"—a chart that Bernard could have introduced at trial—would have added little to this evidence. (Doc. 656 at 98.) Moreover, Hunt's testimony about Bernard's role in the gang would not have undercut the evidence about his role *in the offense*—*i.e.*, that he willingly agreed to participate in the carjacking, that the weapon used to carjack and shoot the Bagleys belonged to him, that he bought lighter fluid with the money Vialva gave him, that he helped pour lighter fluid in the Bagley's car while the Bagleys were held captive in the trunk, that Stacie Bagley died from the resulting fire, or that Bernard provided and drove the getaway car. Bernard cannot demonstrate that the nominal evidence about the gang's structure offered at Sparks's resentencing would have materially affected the jury's sentence. Accordingly, even if his motion were not barred on procedural grounds as a successive motion, Bernard could not show that his *Brady* claim has any merit.

Bernard's *Napue* claim would also fail. Under *Napue*, the government "may not knowingly use false evidence" to obtain a conviction. *Napue*, 360 U.S. at 269. As detailed above, nothing in Hunt's testimony at Sparks's resentencing undermined the trial evidence or suggested that the government introduced false evidence relating to Bernard's role in the gang. And any alleged *Napue* error would be harmless in any event, in light of the ample evidence that Bernard was not a leader in the gang but nevertheless played a substantial role in the Bagleys' murders.

**III.    Neither 18 U.S.C. § 3596(a) nor the Judgment Prevent the Government from Scheduling or Carrying out Bernard's Sentence.**

In his motion for an injunction, Bernard argues for the first time that both 18 U.S.C. § 3596(a) and the judgment in his case prevented the government from scheduling an execution date because he had not exhausted review of his conviction and sentence. (Doc. 706 at 9–14.) Bernard does not have any pending claim under § 3596(a) that would support an injunction, and he has not cited any statutory authority that would give this Court jurisdiction to enjoin his execution. But, in any event, Bernard misreads both Section 3596(a) and the judgment, which incorporates similar language. (*See* Doc. 290 at 2.) Section 3596(a) states that a person sentenced to death "shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence." By its plain terms, the statute says nothing at all about when the *scheduling* of an execution may occur, as opposed to when the execution may occur. Bernard's focus (*see* Doc. 706 at 6-7) on the precise sequence of events on October 14, 2020, and the status of this Court's docket on that date, is therefore irrelevant. Section 3596(a) did not prevent the government from acting in October to schedule Bernard's execution in December, even if Bernard still had any pending appellate proceedings at that time.

Furthermore, although it makes no difference to the analysis under § 3596(a), the government notes that, by the time the government gave notice of the December 10 execution date, the Fifth Circuit had *already* issued its mandate in the case denying Bernard authorization to file a successive § 2255 motion. Mandate, *In re Bernard*, No. 19-50837 (Sept. 9, 2020). The Fifth Circuit has also now issued its mandate in the case in which Bernard challenged this Court's decision to characterize his 2019 filing as an unauthorized successive § 2255 motion and to transfer

13

it to the court of appeals. *See* Mandate, *United States v. Bernard*, No. 19-70021 (Nov. 16, 2020). Accordingly, all of the Fifth Circuit proceedings are now clearly final.

Section 3596(a) also does not prevent the government from carrying out Bernard's lawful sentence on December 10, 2020, as scheduled. Bernard contends that he is entitled not to be executed until the Supreme Court disposes of a certiorari petition that he has not yet filed, which will apparently challenge the Fifth Circuit's decision finding his 2019 filing to be an unauthorized second-or-successive § 2255 motion. (Doc. 706 at 10-12.) Even assuming for the sake of argument that § 3596(a)'s reference to "review of the sentence" includes collateral review under § 2255, Bernard has already had such review. Like his co-defendant Vialva, Bernard "has thoroughly litigated the legality of his conviction and sentence for almost two decades on direct appeal and in post-conviction proceedings before this Court, the Fifth Circuit, and the Supreme Court." (Doc. 690 at 10.) He has thus more than "exhaust[ed] the procedures . . . for review of the sentence." 18 U.S.C. § 3596(a). By contrast, Bernard identifies no authority for his apparent view that § 3596(a) prevents the carrying out of a lawful sentence while a defendant continues to file and litigate unauthorized second-or-successive § 2255 motions. If that were the case, a defendant could delay his execution indefinitely by filing successive § 2255 motions and contesting whether each one in fact qualified as second-or-successive. Section 3596(a) does not disable the government from proceeding with an execution in the face of such dilatory tactics.

## IV.    The Other Equitable Factors Weigh Against Entry of an Injunction.

Finally, the balance of the equities weighs against issuing an injunction. The government has a strong interest in the timely enforcement of criminal sentences imposed by unanimous federal juries after fair trials that have been upheld through extensive appellate and post-conviction proceedings in federal courts. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019). Once post-

14

conviction proceedings "have run their course," as they have here, "finality acquires an added moral dimension." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). Consequently, delay "inflict[s] a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the State and the victims of crime alike." *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring)). Unduly delaying executions can also frustrate the death penalty by undermining its retributive and deterrent functions. *See Bucklew*, 139 S. Ct. at 1134; *id.* at 1144 (Breyer, J., dissenting).

The government's interest in implementing Bernard's sentence is magnified by the "heinous" nature of his crimes. After listening to the Bagleys beg for their lives, Bernard bought lighter fluid and set fire to the car, burning Stacie Bagley alive. His death sentence has been upheld throughout his many years of direct and post-conviction review. The balance of equities therefore tips strongly in the government's favor.

## CONCLUSION

For these reasons, the Court should deny Bernard's motion to enjoin.

Respectfully submitted,

Gregg N. Sofer
United States Attorney

By:   */s/*  _____

Mark Frazier
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of November, 2020, I filed this document with the

district court using the CM/ECF filing system, which will cause a copy to be delivered to Appellant's counsel, John Robert Carpenter.

/s/
Mark Frazier
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | CAPITAL CASE |
| v. | § | NO. 6:99-CR-00070-ADA-2 |
| | § | Execution Date: Dec. 10, 2020 |
| BRANDON BERNARD. | § | |

**ORDER**

The Motion of Defendant Brandon Bernard, requesting this Court enter an order enjoining

the Federal Bureau of Prisons and United States Marshals Service from conducting his execution,

is DENIED.

It is so ordered this _____ day of November, 2020.

_____
HONORABLE ALAN D. ALBRIGHT
UNITED STATES DISTRICT JUDGE